IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action |
| | ) | |
| v. | ) | No. 1:23-CR-00271-JPB |
| | ) | |
| CHAD CHRISTOPHER STARK, | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM</u>

COMES NOW the United States of America (the "Government"), by and through its undersigned counsel, and for its response to the Defendant's Sentencing Memorandum (Doc. 10) states the following:

I.    **Factual Background**

On January 5, 2021, the day before the United States Congress was set to count the Electoral College votes, the Defendant posted the following 247-word ad on Craigslist.com with the title "Georgia Patriots it's time to kill [Official A] the Chinese agent:"

> Georgia Patriots it's time for us to take back our state from these Lawless treasonous traitors. It's time to invoke our Second Amendment right it's time to put a bullet in the treasonous Chinese [Official A]. Then we work our way down to [Official B] the local and federal corrupt judges. It's our duty as American Patriots to put an end to the lives of these traitors and take back our country by force we can no longer wait on the corrupt law enforcement in the corrupt courts. If we want our country back we have to exterminate these people. One good loyal Patriot deer hunter in camo and a rifle can send a very clear message to these corrupt governors.. militia up Georgia it's time to spill blood.... we need to pay a visit to [Official C] and her family as well and put a bullet her behind the ears. Let's be very clear to our local law enforcement who have stood down and watch BLM antifa destroy our country and kill our citizens yet you'll step up to stop Patriot supporters you'll enforce face mask and you'll close American businesses??? Remember one thing local law

enforcement the key word being local..... we will find you oathbreakers and we're going to pay your family to visit your mom your dad your brothers and sisters your children your wife... we're going to make examples of traitors to our country... death to you and all you communist friends.

*See* Presentence Investigation Report dated October 25, 2023 ("PSR") at ¶ 6.

The Defendant also selected and uploaded the following six images to accompany the above language:











In completing the process required by the Defendant to post the entire ad, the Defendant took several deliberate and separate steps. For example, the Defendant entered the zip code for the downtown Atlanta area, 30303. The Defendant selected the category for the post as "general for

sale – by owner." The Defendant set a price of "10000." The Defendant also input the following information into separate, distinct fields from a series of drop-down menus:

- "area_description: atlanta, GA;"

- "subarea_description: otp north;"

- "geographic_area: Atlanta;"

- "category_type: for sale."[1]

Multiple witnesses saw the post and reported it to law enforcement. *See* PSR at ¶ 14. One witness reported they were concerned about someone going through with the offer because of the political climate during that time. *Id*. Another witness recounted seeing the advertisement stating, "I remember it was quite chilling and seemed quite serious unlike many similar type Craigslist/Social Media rants." *See* PSR at ¶ 15. Another witness was concerned someone would get hurt because the threat referenced specific individuals. *Id*.

The Defendant was identified as the author of the post and was first interviewed by law enforcement personnel on January 5, 2021. *See* PSR at ¶ 9. The Defendant admitted to making the Craigslist advertisement and stated that he was upset about the political environment of the United States and that he wanted to make a statement. *Id*. The Defendant also acknowledged that his post could have the effect of causing others to commit dangerous and violent acts. *See* PSR at ¶ 11.

The Defendant was interviewed again on January 21, 2022. *See* PSR at ¶ 21. During this second interview, the Defendant consented to a review of his cellular phone. *Id*. While federal agents reviewed the Defendant's cellular phone, the Defendant was asked if he was making similar posts prior to the Craigslist ad on January 5, 2021.[2] In response, the Defendant stated, "No. I had-

[1] January 6, 2022, Interview of James Luedeke (FBI_SERIAL_029_00000001).

[2] Recording of defendant's phone search via FBI issued cell phone (Stark.mp4).

I had done that, I think, one, once or twice right up, like maybe two days consecutive right around the same time." During the second interview of the Defendant, agents also observed an email from Craigslist with a link to a posting titled "Thomas Jefferson was right." The email was dated January 7, 2021, two days after the Craigslist posting at issue here and Stark's initial interview with the FBI. When Stark selected the link for the post embedded in the email during the second interview, the post was no longer accessible.

## II.    <u>Applicability of §2A6.1(b)(6)</u>

The Defendant asserts that the 4-level reduction in §2A6.1(b)(6) of the United States Sentencing Guidelines applies because the offense involved a single instance evidencing little or no deliberation. Doc. 10 at 2. However, the facts present here show that Stark engaged in more than little deliberation, and that the 4-level reduction should not apply.

There is no test for how little deliberation is required for the 4-level reduction in §2A6.1(b)(6) to apply. However, there are examples that can be utilized by the Court for comparison. In *United States v. Russell*, 322 Fed.Appx. 920 (11th Cir. 2009), the Eleventh Circuit held that the district court had not committed clear error in denying the 4-level reduction where it found there was more than little deliberation. *Russell* at 923. There, the appellant appealed a 37-month sentence after pleading guilty to one count of violating 18 U.S.C. § 871(a). *Id* at 921. The appellant had called 911 from a public payphone and told the dispatcher that "he was 'thinking about killing the President,' that he 'really meant[t] it,' " and that he would wait for the police to arrive. *Id*. The appellant reiterated that he wanted to kill the President to the arresting officer and then again later during an interview. *Id*. The appellant explained that he had been walking from Alabama on his way to kill the President when he stopped to call 911. *Id* at 924. The *Russell* Court stated that there is a "need for a case-by-case review of the factual context of a threat in order to

make a deliberation finding." *Russell* at 924. On those facts, the Eleventh Circuit found no clear error with regard to the lower court's finding of deliberation. *Russell* at 925.

In its analysis and finding no error with the district court, the *Russell* Court cited *United States v. Stevenson*, 126 F.3d 662 (5th Cir. 1997). *Russell* at 924. In *Stevenson*, the Fifth Circuit found sufficient deliberation present in a case analogous to the case at bar, albeit one involving a threat transmitted via letter rather than over the internet. In *Stevenson* the appellant sent a threatening letter to his probation officer after he was arrested on a new offense. *Stevenson* at 663. Like the defendant here, the appellant admitted he had written the letter, and that he had no intention of carrying out the threat. *Id*. In holding there was no error in the denial of the 4-level reduction in §2A6.1(b)(6), the Fifth Circuit found that,

> His actions involved the deliberate securing of stationary and postage, the composition of a letter, the search for an address, and the act of taking the letter to be mailed. It was not a spontaneous, momentary action done out of opportunity or impulse. There were many steps along the way in which he could have stopped himself, but he didn't.

*Stevenson* at 665.

The Eleventh Circuit also recently found "ample deliberation" where the appellant had been convicted of mailing a threatening communication in violation of 18 U.S.C. § 876(c) and had received a 60-month prison sentence. *United States v. Curtin*, 78 F.4th 1299, 1304 (11th Cir. 2023). In *Curtin*, the defendant filed a pleading objecting to a report and recommendation dismissing his lawsuit, and in that pleading threatened the assigned Judge and included a link to a video of the appellant listening to a gospel hymn and taking a black preacher's hand. *Curtin* at 1305. In ruling, the Court noted that the defendant in that case "(1) composed his objection; (2) tailored it to his victim, in particular with an emphasis on her race; (3) took the time and energy to embed a video in it; (4) tried to deliver it in person, to no avail; and then (5) mailed it." *Id*. at 1311.

Here, there is considerably more evidence of deliberation than was present in *Russell*, and at least similar evidence of deliberation that was present in *Stevenson* and *Curtin*. Indeed, Stark engaged in multiple deliberate actions that were not spontaneous nor done out of impulse. Stark first had to access his Craigslist account, then select the option to place an ad. Stark then crafted the title for the posting, "Georgia Patriots it's time to kill [Official A] the Chinese agent." PSR at ¶ 6. Stark then composed the 247-word body of the ad, which identified specific individuals that should be murdered, even recommending that one of the "Patriots" that might read the ad use "camo and a rifle." *Id*. Stark not only targeted the specific election officials named in the ad, he also threatened, "we're going to pay your family to visit your mom you dad your brothers and sisters your children your wife."

Stark also selected the category for the ad to posted in, set the price at $10,000, and entered Atlanta, Georgia as the area for the ad, which is where the victims were located.[3] Not only that, Stark entered the zip code for the downtown Atlanta area, which if he did not already know, he would have had to have taken steps to discern, such as conducting a separate internet search for that information. Lastly, Stark also had to search for, and then select, *each* of the six images that were embedded with his threatening post, which were either already on his phone or were searched for and downloaded from the internet.[4]

The amount of thought, time and effort that would have been minimally required to compose and post the threatening ad is objectively more than "little deliberation;" it is "ample

---

[3] January 6, 2022, Interview of James Luedeke (FBI_SERIAL_029_00000001).

[4] During the January 21, 2022, interview and review of Stark's cellular phone, a review of the photos on the phone was also conducted. During the review of the photos present on Stark's phone, four of the six images (the Kyle Rittenhouse image, the Michael Flynn image, the American flag image, and the "The Passion of the Christ" image) can be seen in the photo library. Recording of defendant's phone search via FBI issued cell phone (Stark.mp4 at 7:28, 7:34, 7:37 and 7:47).

deliberation," and accordingly, the 4-level reduction in §2A6.1(b)(6) should not apply. *Curtin*, 78 F.4th at 1304.

### III. **Appropriate Guidelines Calculation**

The Government agrees with the PSR and Stark that the appropriate guideline is §2A6.1. However, the Government argues that based upon the facts present and the inapplicability of §2A6.1(b)(6), the correct calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level | 12 | §2A6.1(a)(1) |
| Victim Adjustment | +6 | §3A1.2(b) |
| Acceptance | -2 | §3E1.1(a) |
| Acceptance | -1 | §3E1.1(b); Doc. 4-1, ¶ 14 |

**Total Offense Level  15**

The Government also agrees that Stark has a Criminal History Category of I. The Government argues that the resulting advisory guideline range is 18-24 months in Zone D.

### IV. **Argument as to Sentence**

The Government argues that Stark's request for a probationary sentence with house arrest is inappropriate based on the facts and circumstances presented.

A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The nature and circumstances of the offense conduct, here calling for the killing of multiple election officials in Georgia,[5] as well as their families, for only doing their jobs, is particularly egregious. Even though, as the Defendant points out, the intended targets of his calls to murder did not directly receive these threats (Doc. 10 at 7), the reaction to the threats by those that did see them demonstrates the seriousness of the offense. Multiple witnesses saw the post and reported it to law enforcement. *See* PSR at ¶ 14. These witnesses stated they thought someone might answer

---

[5] "If the offense involved … (iv) multiple victims … an upward departure may be warranted." U.S.S.G. §2A6.1, comment. (n.4(b)).

the ad's call to action, and that it was atypical of similar political commentary regarding the 2020 Presidential election. *See* PSR at ¶¶ 14 & 15.

Stark attempts to minimize his offense conduct and argues that it was not that serious because Craigslist is "not considered the hub of viral internet content," and that he didn't actually have the $10,000 to pay anyone to carry out the killings. Doc. 10 at 7. However, Stark's call for murder only needed to reach and inspire one person willing to answer that call to reap irreversible and tragic results. Stark argues that his threats were "fundamentally political" and "political hyperbole." Doc. 10 at 6. The Government contends that advertising a $10,000 bounty for the killing of election officials, especially (as the Defendant describes, Doc. 10 at 6) "in the heat of 'controversy' surrounding the 2020 presidential election," constitutes serious, violent criminal conduct, as evidenced by this prosecution and the defendant's own guilty plea.

Stark's prior criminal history, while only resulting in 1 criminal history point, also counsels against his requested sentence of probation and home confinement. Stark has five prior felony convictions, four of which are related to drug offenses (*see* PSR at ¶¶ 40, 41, 42 and 43). Most instructive here is Stark's most recent conviction in 2012 for Injury to a Child Reckless/Criminal Neglect. *See* PSR ¶ 45. There, Stark received a probationary sentence of 3 years and 150 hours of community service. *Id.* While Stark completed that probationary sentence, it was not a sufficient deterrent to prevent him from engaging in the conduct at issue here. The Government is concerned that sentencing Stark to another probationary sentence would be a similarly ineffective deterrent.

B.    The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(A))

In addition to the need for specific deterrence as discussed above, as we are on the eve of another election season, there is also a palpable need for general deterrence. Threats to election workers in Georgia and across the county are an ongoing and serious concern that is effecting our

fundamental democratic processes. An April 2023 survey of election officials[6] found that over half are concerned that threats, harassment, and intimidation against local election officials will make it more difficult to retain or recruit election workers in future elections. In that same survey, 30 percent reported that they had been personally abused, harassed, or threatened because of their job as a local election official; 73 percent stated that they feel threats to election officials have increased in recent years; and 45 percent fear for the safety of their colleagues and staff. This type of environment cannot be tolerated by the institutions—like this Court—that have the ability to protect the frontline of democracy, our election workers.

It is important that other individuals, who might consider threatening election officials, see that these types of threats have serious consequences. Sentencing Stark, an offender with multiple prior felony convictions, to a sentence of probation for offering to pay $10,000 in exchange for the mass murder of election officials and their families is likely to have little, if any, general deterrent effect.

## V.    <u>Conclusion</u>

For the foregoing reasons, the United States respectfully requests that the Court not apply the 4-level reduction in §2A6.1(b)(6) and sentence the Defendant to an appropriate period of incarceration considering the advisory guideline range of 18-24 months and the 18 U.S.C. § 3533(a) factors as discussed herein.

DATED this 20th day of November, 2023.

COREY R. AMUNDSON

---

[6]  https://www.brennancenter.org/our-work/research-reports/local-election-officials-survey-april-2023.

Chief, Public Integrity Section
United States Department of Justice

_/s/ Aaron L. Jennen_
Aaron L. Jennen (Ark. Bar No. 2004156)
Trial Attorney
United States Department of Justice
Criminal Division, Public Integrity Section
1301 New York Ave., NW
Washington, DC 20005
Telephone:  (202) 514-1412
Email:  aaron.jennen2@usdoj.gov


Brent Alan Gray (Bar No. 155089)
Assistant United States Attorney
U.S. Attorney's Office
for the Northern District of Georgia
Richard B. Russell Federal Building
75 Ted Turner Dr., SW
Suite 600
Atlanta, GA 30303
Telephone: (404) 581-6077
Email: brent.gray@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant. I have also separately provided a copy of the above to the attorney of record for the defendant via email at Thomas_Hawker@fd.org.

Dated: November 20, 2023                          /s/ Aaron L. Jennen
                                                  Aaron L. Jennen
                                                  Trial Attorney